UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| JOSEPH M. SALGADO, | No. ED CV 08-416-PLA |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION AND ORDER** |
| MICHAEL J. ASTRUE, COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | |
| Defendant. | |

**I.**

**PROCEEDINGS**

Plaintiff filed this action on April 2, 2008, seeking review of the Commissioner's denial of his application for Supplemental Security Income payments. The parties filed Consents to proceed before the undersigned Magistrate Judge on August 7, 2008, and August 8, 2008. The parties filed a Joint Stipulation on December 16, 2008, that addresses their positions concerning the disputed issue in the case. On July 21, 2009, pursuant to the Court's Order of June 24, 2009,

/

/

/

the parties filed Supplemental Joint Memoranda. The Court has taken the Joint Stipulation and Supplemental Joint Memoranda under submission without oral argument.

## II.

## **BACKGROUND**

Plaintiff was born on November 21, 1948. [Administrative Record ("AR") at 51, 224.] He has a high school education and has completed one year of college. [AR at 52.] Plaintiff has past relevant work experience as a field worker. [AR at 256.]

On October 19, 1993, plaintiff protectively filed his application for Supplemental Security Income ("SSI") payments.[1] [AR at 224-28, 252-59.] After his application was denied initially and on reconsideration, plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). [AR at 239-51.] A hearing was held on October 31, 1995, at which time plaintiff appeared with a paralegal representative and testified on his own behalf. [AR at 42-83.] On December 20, 1995, the ALJ determined that plaintiff was not disabled. [AR at 369-78.] Plaintiff requested review of the hearing decision. [AR at 379.] On December 3, 1996, the Appeals Council granted plaintiff's request for review, vacated the ALJ's decision, and remanded the case for further administrative proceedings for the purpose of reassessing plaintiff's medical disability. [AR at 386-88.] A second hearing was held on August 13, 1997, at which time plaintiff again appeared with a paralegal representative and testified on his own behalf. [AR at 84-148.] A medical expert and a vocational expert also testified. [AR at 127-38.] On August 27, 1997, the ALJ determined that plaintiff was disabled and eligible for SSI payments. [AR at 509-19.] On November 5, 1997, the Social Security Administration issued a "Notice of Disapproved Claim," in which it notified plaintiff that he was not eligible to receive SSI payments because he was born in Juarez, Mexico and had never been legally admitted into the United States as an alien. [AR at 523-27.] Plaintiff filed a request for

---

[1] Plaintiff first applied for SSI benefits on March 19, 1990. Although he was found eligible for those benefits, it was later determined that he was ineligible for the period of June 1990 through October 1992, based on his inability to establish the requirements of a citizen or national of the United States. [AR at 19-23.]

reconsideration on December 16, 1997. [AR at 528-29.] On April 21, 1998, the Social Security Administration denied plaintiff's request for reconsideration based on the finding that his place of birth was Juarez, Mexico. [AR at 532-36.] Plaintiff requested a hearing before an ALJ. [AR at 537-38.] Two hearings were then held, on February 25, 1999, and October 27, 1999, before a different ALJ. [AR at 149-72, 173-200.] On March 30, 2000, the ALJ determined that plaintiff did not meet the requirements as a citizen or national of the United States, and therefore was not eligible for SSI payments. [AR at 674-78.] Plaintiff requested review of the hearing decision. [AR at 645.] On December 3, 2001, the Appeals Council denied plaintiff's request for review. [AR at 653-54.] However, on February 22, 2002, the Appeals Council concluded that a new hearing and decision were needed based on a complete evidentiary record, and thus granted plaintiff's request for review and remanded the case for further administrative proceedings. [AR at 658-62.] A hearing was held before a third ALJ on June 11, 2002, at which time plaintiff appeared with counsel and testified on his own behalf. [AR at 201-23.] On August 21, 2002, the ALJ found that plaintiff did not meet the requirements as a citizen or national of the United States, and thus denied him SSI benefits. [AR at 16-23.] Plaintiff once again requested review of the hearing decision. [AR at 15.] On September 26, 2003, the Appeals Council denied plaintiff's request for review. [AR at 9-12.]

Plaintiff then filed an action in District Court, Case No. ED CV 03-1320-PLA, challenging the Commissioner's decision. On October 26, 2004, the Court remanded the matter for further proceedings, concluding that the ALJ failed to provide appropriate reasons for rejecting the testimony of plaintiff and his family members and failed to properly consider evidence from the Mexican Consulate. [AR at 727-727H.] On December 30, 2004, the Appeals Council vacated the ALJ's decision and remanded the case for further proceedings consistent with the Court's 2004 Order. [AR at 728.] On September 29, 2005, a fourth hearing was held before a different ALJ. [AR at 741-61.] On June 6, 2006, the ALJ determined that plaintiff did not meet the requirements as a citizen or national of the United States, and therefore was not eligible for SSI payments. [AR at 695-701.]

1       Plaintiff filed a second action in District Court, Case No. ED CV 06-848-PLA. Pursuant to a Stipulation to Voluntary Remand, the Court remanded the case for further proceedings on February 22, 2007, directing the ALJ to consider the certified birth certificate issued by the State of Texas and to provide another hearing on the issue of whether plaintiff is a United States citizen. [AR at 1115-19.] On April 3, 2007, the Appeals Council vacated the ALJ's decision and remanded the case for further proceedings consistent with the Court's 2007 Order. [AR at 1120-23.] Plaintiff declined to appear for a hearing and requested a decision based on the evidence in the record. [AR at 766.] On January 25, 2008, the ALJ again found that plaintiff did not meet the requirements as a citizen or national of the United States.[2] [AR at 765-66.] This action followed.

### III.

### **STANDARD OF REVIEW**

      Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. Moncada v. Chater, 60 F.3d 521, 523 (9th Cir. 1995); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

      In this context, the term "substantial evidence" means "more than a mere scintilla but less than a preponderance -- it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." Moncada, 60 F.3d at 523; see also Drouin, 966 F.2d at 1257. When determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence. Drouin, 966 F.2d at 1257; Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir.

---

[2] Plaintiff filed a new application for SSI benefits on May 29, 2008, was awarded benefits on October 8, 2008, and is currently in pay status. See Joint Stipulation at 4; see also Supplemental Joint Memoranda at 2; Supplemental Joint Memoranda, Exhibits B, C. Defendant represents that the Appeals Council plans to revisit the finding of plaintiff's eligibility for benefits, contending that "the question of citizenship was not properly developed on the subsequent application." Supplemental Joint Memoranda at 2-3.

4

1 1989). Where the evidence is susceptible to more than one rational interpretation, the Court must
2 defer to the decision of the Commissioner. Moncada, 60 F.3d at 523; Andrews v. Shalala, 53 F.3d
3 1035, 1039-40 (9th Cir. 1995); Drouin, 966 F.2d at 1258.

**IV.**

**THE ALJ'S DECISION**

Plaintiff contends that the ALJ failed to properly consider evidence of his United States citizenship. Joint Stipulation ("Joint Stip.") at 5. Specifically, plaintiff argues that the ALJ erred in concluding that he was born in Mexico, rather than in El Paso, Texas, and thus is not a citizen of the United States. As set forth below, the Court remands the matter for further proceedings.

In order to be eligible for SSI benefits, the claimant must be:

> (b) . . . a resident of the United States . . ., and (1) A citizen or a national of the United States (§ 416.1610).

20 C.F.R. § 416.202.

To support his claim of United States citizenship, plaintiff offered into evidence, among other documentation, a "delayed birth certificate" dated March 11, 1996, that was issued based on plaintiff's mother's sworn statement that plaintiff was born on a ranch in El Paso, Texas on November 21, 1948 [AR at 552]; a statement from the Acting Consul General of Mexico endorsing the truthfulness of the circumstances set out in the affidavit of plaintiff's mother, in which she states that although plaintiff was born in the United States, plaintiff has a Mexican birth certificate because it was necessary to register him in Mexico in order for him to obtain medical services or to attend public school [AR at 680-81]; a statement from a federal probation officer that plaintiff was born in Texas [AR at 554]; a statement from a chief investigator with the Command Investigations Office of the Naval Training Center in San Diego that plaintiff "is a competent and honest worker" [AR at 555]; an affidavit signed by plaintiff's mother and father dated July 14, 1995, which states that plaintiff was born in El Paso, Texas [AR at 606]; a declaration signed by plaintiff's parents dated November 25, 1997, explaining why a Mexican registration of birth was obtained for plaintiff [AR at 565]; a declaration signed by plaintiff's sister, Rosa Velia Marmolejo, dated January 3, 1997,

declaring that plaintiff was born in El Paso, Texas, and describing the circumstances surrounding plaintiff's receipt of a Mexican registration of birth [AR at 563-64]; a declaration signed by plaintiff's brother-in-law, Charles Marmolejo, which states that plaintiff was born in El Paso, Texas in 1948 [AR at 669]; a translated declaration of plaintiff's uncle dated January 5, 1998, declaring that plaintiff and his parents came to Mexico from El Paso, Texas to visit family members in 1949 [AR at 624-27]; a declaration of plaintiff's sister, Alicia Huerta, dated January 2, 1998, in which she declares that plaintiff was born in El Paso, Texas on November 21, 1948, and explains the reason why plaintiff received a Mexican registration of birth [AR at 541-43]; and a translated declaration of plaintiff's mother dated July 24, 1998, in which she explains that on January 10, 1949, plaintiff and plaintiff's family traveled to Mexico for the purpose of obtaining medical treatment for plaintiff, and states that while boarding the bus to travel to the interior of Mexico, the family was stopped by immigration agents and instructed to register plaintiff in Mexico since he had no identification. [AR at 632.]

In the decision, the ALJ noted that "[t]he general issue is whether [plaintiff] is a citizen of the United States." [AR at 766.] The ALJ considered the 2006 final decision of the Texas Department of State Health Services that resulted in the issuance of a certified copy of plaintiff's birth certificate, and accorded it "little weight" because it relied on the affidavits of plaintiff's family members that the ALJ found "are inconsistent with, and contradicted by, other evidence which is more probative and compelling . . . ." [AR at 766, 1109-13.] In discounting the Texas decision, the ALJ incorporated by reference his previous decision of June 6, 2006. [AR at 766.] The ALJ noted that the Texas decision "does not address any of the facts which I relied on to refute the family members' affidavits, and which underlined the basis for my concluding that [plaintiff] was not born in the United States." [AR at 766.]

The ALJ's selective reliance on the portions of the record that were favorable to his determination that plaintiff "was not born in the United States and is not a citizen of the United

/

/

/

6

States" was error.[3] [AR at 766.] The ALJ cannot pick and choose from the evidence in order to support his conclusions. See Reddick v. Chater, 157 F.3d 715, 722-23 (9th Cir. 1998) (it is impermissible for the ALJ to develop an evidentiary basis by "not fully accounting for the context of materials or all parts of the testimony and reports"); see also Fiorello v. Heckler, 725 F.2d 174, 176 (2d Cir. 1983) (the ALJ cannot selectively choose evidence in the record that supports his conclusions); Gallant v. Heckler, 753 F.2d 1450, 1456 (9th Cir. 1984) (error for an ALJ to ignore or misstate the competent evidence in the record in order to justify her conclusion); Day v. Weinberger, 522 F.2d 1154, 1156 (9th Cir. 1975) (an ALJ is not permitted to reach a conclusion "simply by isolating a specific quantum of supporting evidence"); Whitney v. Schweiker, 695 F.2d 784, 788 (7th Cir. 1982) ("[A]n ALJ must weigh all the evidence and may not ignore evidence that suggests an opposite conclusion.") (citation omitted).

In his decision of June 6, 2006, the ALJ discussed the seemingly inconsistent statements in the 1995 affidavit of plaintiff's parents and the 1998 affidavit of plaintiff's mother, without any discussion of the affidavits of plaintiff's sisters, uncle, and brother-in-law. [AR at 695-701.] In 1995, in support of plaintiff's application for a delayed Texas birth certificate, plaintiff's parents prepared an affidavit in which they stated that plaintiff was born on a ranch in El Paso, Texas, with the assistance of a "[r]anch doctor," as the family did not have a car to go to the hospital. [AR at 606.] The ALJ noted that, based on the 1995 affidavit of plaintiff's parents, one could reasonably conclude that "no original birth certificate was issued at the time of [plaintiff's] birth." [AR at 700.] In 1998, in explaining why plaintiff had obtained a Mexican registration of birth, plaintiff's mother stated that the family traveled to Mexico to obtain medical treatment for plaintiff, but forgot to bring plaintiff's documentation, and thus was required to obtain identification documentation, i.e., a birth certificate, from the Mexican Civil Registration office. [AR at 596.] The ALJ noted that, although possibly open to more than one interpretation, in indicating that she had forgot plaintiff's

---

[3] The ALJ primarily relied on the Application for Social Security Number dated April 5, 1968, in which plaintiff's place of birth was noted as Juarez, Mexico [AR at 697-98, 837]; the seemingly contradictory statements in the 1995 affidavit of plaintiff's parents and the 1998 affidavit of plaintiff's mother [AR at 606, 632, 699-700]; and plaintiff's Mexican registration of birth. [AR at 548-50, 700-01.]

7

1 documentation, plaintiff's mother was presumably referring to a birth certificate or other official
2 document regarding plaintiff's birth. [AR at 699-700.] The ALJ found the statements by plaintiff's
3 parents in the affidavit of July 14, 1995, and plaintiff's mother in the affidavit of July 24, 1998, "to
4 be contradictory with respect to the issue of whether [plaintiff] did or did not have an original Texas
5 birth certificate, and in turn, why [plaintiff] obtained a Mexican registration of birth."[4] [AR at 700.]
6 Specifically, the ALJ noted that if plaintiff's mother obtained and possessed an original Texas birth
7 certificate at least through 1968 (which plaintiff states was used in order to get his social security
8 number [AR at 1092-98]), then her 1995 affidavit is not fully credible. [AR at 700.] The ALJ further
9 noted that if plaintiff's mother did not obtain an original Texas birth certificate for plaintiff at or soon
10 after his birth, then her 1998 affidavit is also not credible. [AR at 700.] Although "questions of
11 credibility and resolutions of conflicts in the testimony are functions solely of the Secretary" (see
12 Morgan v. Commissioner of the Social Security Administration, 169 F.3d 595, 599 (9th Cir. 1999)),
13 the ALJ's reliance on this perceived inconsistency between the 1995 affidavit of plaintiff's parents
14 and the 1998 affidavit of plaintiff's mother is insufficient, given that he failed to specifically consider
15 the affidavits of plaintiff's sisters, uncle, and brother-in-law.[5] See discussion, infra; see also Scott
16 v. Shalala, 898 F. Supp. 1238, 1245 (N.D. Ill. 1995) (at a minimum, the ALJ has the duty to
17 consider the "important evidence" and to "articulate . . . his analysis of the evidence . . ." such that
18 the court can "trace the path of [his] reasoning"); Thompson v. Barnhart, 2006 WL 709795, *13
19 (E.D. Pa. Mar. 15, 2006) ("'Since it is apparent that the ALJ cannot reject evidence for no reason
20 or for the wrong reason, an explanation from the ALJ of the reason why probative evidence has
21 been rejected is required so that a reviewing court can determine whether the reasons for rejection

---

[4] The ALJ did not mention the 1997 declaration of plaintiff's parents, in which they also explain the issuance of plaintiff's Mexican registration of birth. [AR at 565, 632.] The explanation provided in the 1997 declaration is the same as that provided by plaintiff's mother in the 1998 affidavit. [AR at 565.]

[5] The final decision of the Texas Department of State Health Services included findings of fact as to the 1995 affidavit of plaintiff's parents and the 1998 affidavit of plaintiff's mother, as well as the affidavits of plaintiff's sisters and plaintiff's uncle, which resulted in the issuance of a certified copy of a Texas birth certificate for plaintiff. [AR at 1109-13.]

were improper.'"); Vincent v. Heckler, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (the ALJ need not discuss all of the evidence presented but must explain why he rejected "significant probative evidence") (citation omitted); Social Security Ruling[6] 06-03p (an ALJ must "consider all of the available evidence in the individual's case record in every case"). As such, the ALJ erred by failing to consider the record as a whole.

An ALJ can reject the testimony of lay witnesses only if he gives reasons germane to each witness whose testimony he rejects. See Dodrill v. Shalala, 12 F.3d 915, 919 (9th Cir. 1993) (in order to reject lay testimony, an ALJ must give reasons "germane to each witness" for doing so); see also Sprague v. Bowen, 812 F.2d 1226, 1231-32 (9th Cir. 1987) (lay witness testimony by family members who have the opportunity to observe plaintiff on a daily basis "constitutes qualified evidence" that the ALJ must consider, and "[d]isregard of this evidence violates the Secretary's regulation that he will consider observations by non-medical sources as to how an impairment affects a claimant's ability to work"); 20 C.F.R. §§ 404.1513(d), 416.1913(d). As the Court noted in its previous decision with respect to plaintiff's earlier action in District Court, Case No. ED CV 03-1320, the Court knows of no reason that this same standard would not also apply when reviewing non-impairment related credibility issues. Here, the ALJ failed to specifically consider the lay witness statements of plaintiff's sisters, uncle, and brother-in-law that plaintiff was born in the United States. There are no apparent inconsistencies within or between the statements of these witnesses. Nor is there any indication that these witnesses were exaggerating or fabricating their version of the events. Neither the ALJ's decision of January 25, 2008, nor his earlier decision of June 6, 2006, contain any specific discussion of the lay witness statements of plaintiff's sisters, uncle, or brother-in-law, or identify what statements made by these witnesses the ALJ rejected as not credible, or why those statements were not credible. [AR at 695-701, 765-66.] See Smith v. Heckler, 735 F.2d 312, 313 (8th Cir. 1984) (if an ALJ rejects the testimony of lay witnesses, he

---

[6] Social Security Rulings ("SSR") do not have the force of law. Nevertheless, they "constitute Social Security Administration interpretations of the statute it administers and of its own regulations," and are given deference "unless they are plainly erroneous or inconsistent with the Act or regulations." Han v. Bowen, 882 F.2d 1453, 1457 (9th Cir. 1989).

must specifically discuss the testimony and expressly make credibility determinations). To the extent that the ALJ implicitly rejected the lay witness statements of plaintiff's sisters, uncle, and brother-in-law, he did not support his rejection with any reason germane to each of these witnesses. "[T]he Court is constrained to affirm the ALJ only for the reasons set forth in his decision." See Johnson v. Astrue, 2008 WL 2705172, *1 (C.D. Cal. July 7, 2008).

Furthermore, an ALJ cannot reject lay witness testimony simply by rejecting the credibility of a claimant.[7] See Schow v. Astrue, 272 Fed.Appx. 647, 653 (9th Cir. 2008) (ALJ failed to provide reasons for rejecting the lay witnesses' observations that were "'germane to each witness'" by relying heavily on the adverse credibility finding as to the claimant's testimony) (citation omitted); see also Michaels v. Massanari, 16 Fed.Appx. 751, 754-55 (9th Cir. 2001) (ALJ cannot properly discredit lay witness testimony solely because the claimant lacks credibility); see, e.g., Turner v. Apfel, 1998 WL 289288, *12 (N.D. Cal. May 7, 1998) ("[t]he ALJ improperly rejected the lay witnesses' testimony because the ALJ judged the lay witnesses' credibility by her determination of [the claimant's] credibility."). The ALJ's failure to provide sufficient reasons for disregarding the statements of these witnesses therefore constitutes error.

Moreover, the ALJ's failure in this instance does not constitute harmless error because the written statements of plaintiff's sisters, uncle, and brother-in-law may have corroborated plaintiff's testimony or provided additional information that could have impacted the ALJ's determination that plaintiff is not a citizen of the United States. See Booz v. Sec'y of Health and Human Serv., 734 F.2d 1378, 1381 (9th Cir. 1984) (holding that the test for determining whether an error is harmless is "whether there is a reasonable possibility that [the new evidence] would have changed the

---

[7] The reasons provided by the ALJ to accord plaintiff's testimony "very little weight" -- he testified that he or his mother possessed an original Texas birth certificate that was presented to the Social Security Administration in 1968 when he applied for a Social Security number, which is contradicted by the Application for Social Security Number, which states on its face that plaintiff was born in Juarez, Mexico; and he alleged that the Application for Social Security Number is fraudulent, but there is no evidence in the record to support that contention [AR at 701] -- are specific only to plaintiff and do not equally apply to the statements of plaintiff's sisters, uncle, and brother-in-law. As such, the ALJ's reasons for rejecting plaintiff's credibility are not germane to, and could not be used to reject, the statements of plaintiff's sisters, uncle, and brother-in-law.

10

outcome of the present case"); see also Robbins v. Social Sec. Admin., 466 F.3d 880, 885 (9th Cir. 2006) (harmless error applies only when it is clear from the record that an ALJ's error is "'inconsequential to the ultimate nondisability determination'") (quoting Stout v. Commissioner, 454 F.3d 1050, 1055-56 (9th Cir. 2006)). Indeed, the affidavits of plaintiff's sisters, uncle, and brother-in-law, as well as the affidavit provided by the Acting Consul General of Mexico, who would have no reason to provide anything but unbiased information,[8] lend support to plaintiff's testimony[9] and plaintiff's parents' statements regarding his birthplace. [AR at 541-43, 624-27.] Notably, plaintiff's sisters, in their affidavits, stated that plaintiff was born in El Paso, Texas on November 21, 1948, and corroborated plaintiff's testimony and the statements of plaintiff's parents regarding the issuance of plaintiff's Mexican registration of birth.[10] [AR at 541-43, 563-64, 565, 632.] The affidavit of plaintiff's uncle indicates that plaintiff was born in El Paso, Texas, and that shortly after his birth, plaintiff and his family traveled to Mexico. [AR at 624-25.] The declaration of plaintiff's brother-in-law also indicates that plaintiff was born in El Paso, Texas in 1948. [AR at 669.] Because the affidavits of plaintiff's sisters, uncle, and brother-in-law support plaintiff's testimony that he was born in El Paso, Texas, the Court cannot confidently conclude that no reasonable ALJ, if crediting the statements of these lay witnesses, would have reached a different determination. See Ellison v. Astrue, 2008 WL 4425764, *5 (C.D. Cal. Sept. 29, 2008) ("'where the ALJ's error lies in a failure to properly discuss competent lay testimony favorable to the [plaintiff], a reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ,

---

[8] Although the ALJ found that the Acting Consul General's statement was credible with respect to what has occurred in some unspecified number of cases, he noted that it was of limited probative value because the Acting Consul General had no knowledge of what transpired in this particular case. [AR at 697, 701.]

[9] Plaintiff testified that he was born in El Paso, Texas. [AR at 1090.] He further testified that either he or his mother possessed his original Texas birth certificate until 1977 when it was confiscated, along with his other belongings, by a storage facility in Calexico, California, for failure to pay the rental payment. [AR at 1095-96.]

[10] It appears that at least one of plaintiff's sisters was born before plaintiff, and thus may have first-hand knowledge as to plaintiff's birthplace, as well as the circumstances surrounding plaintiff's birth and the issuance of plaintiff's Mexican registration of birth. [AR at 160, 624.]

when fully crediting the testimony, could have reached a different disability determination'") (citing Stout, 454 F.3d at 1056).  Accordingly, remand is warranted.

### V.
### **REMAND FOR FURTHER PROCEEDINGS**

As a general rule, remand is warranted where additional administrative proceedings could remedy defects in the Commissioner's decision.  See Harman v. Apfel, 211 F.3d 1172, 1179 (9th Cir.), cert. denied, 531 U.S. 1038 (2000); Kail v. Heckler, 722 F.2d 1496, 1497 (9th Cir. 1984).  In this case, remand is appropriate to properly consider the evidence as a whole, including the lay witness statements of plaintiff's sisters, uncle, and brother-in-law.  The ALJ is instructed to take such further action as is deemed appropriate and consistent with this decision.[11]

Accordingly, **IT IS HEREBY ORDERED** that: (1) plaintiff's request for remand is **granted**; (2) the decision of the Commissioner is **reversed**; and (3) this action is **remanded** to defendant for further proceedings consistent with this Memorandum Opinion.

**This Memorandum Opinion and Order is not intended for publication, nor is it intended to be included or submitted to any online service such as Westlaw or Lexis.**

DATED: August 19, 2009

*/s/ Paul L. Abrams*
_____
PAUL L. ABRAMS
UNITED STATES MAGISTRATE JUDGE

---

[11] To the extent that further testimony from plaintiff's family members would aid in the ALJ's determination as to whether plaintiff is a citizen of the United States, the ALJ should conduct a hearing to elicit such testimony.